In the Matter of the Arbitration between Milton L. Ehrlich, Incorporated, Appellant, and Unit Frame & Floor Corporation, Respondent.

First Department, March 18, 1958.

*Bernard H. Goldstein* of counsel (*Edward L. Sadowsky* with him on the brief; *Gettner, Simon & Asher,* attorneys), for appellant.

*Caesar L. Pitassy* of counsel (*Royall, Koegel, Harris & Caskey,* attorneys), for respondent.

FRANK, J. This is an appeal from a Special Term order denying a motion to stay arbitration.

By agreement dated June 28, 1956 the petitioner, as contractor, entered into a construction contract with Unit Frame & Floor Corporation, as a subcontractor. Thereafter and during the progress of the work being performed under the contract, the respondent's name "Unit Frame & Floor Corporation" was changed to "Swiss Construction Corporation".

The latter corporation was then dissolved, and its assets, including the contract in question, were distributed in kind to the stockholders. Simultaneously, a new corporation was formed with the same title, namely "Unit Frame & Floor Corporation". There is no dispute that the new corporate entity is not involved in this controversy.

The contract (art. XI) specifically requires that the "Subcontractor shall not sublet, assign, transfer, hypothecate, pledge, convey or otherwise dispose of this Contract or any part thereof or, as the case may be, any moneys due or to become due hereunder unless the previous written consent of the Contractor shall be obtained in each instance. Failure to comply with the provisions of this Article shall be deemed a default under Article ' XX ' and governed accordingly."

The demand for arbitration, dated October 23, 1957, was made by Unit Frame & Floor Corporation, the corporate entity with whom the contract was made. On December 2, 1957, notice to amend was served on the American Arbitration Association, the petitioner and its attorneys. It indicated that the corporate name had been changed to Swiss Construction Corporation. The petitioner was completely unaware of the corporate changes, the dissolution, or that the work contracted for was being completed by the individual stockholders. It was apprised of these developments only after the amended demand for arbitration was served. Moreover, the record is clear that the written consent of the petitioner was never requested or obtained.

None of the individual stockholders of the dissolved corporation was named in the demand for arbitration, and in the absence of any consents by them and the petitioner, they could not acquire the status of parties in the proposed arbitration. Since they were never parties to an arbitration agreement, no award could be binding against them, nor has the petitioner ever agreed to arbitrate insofar as the individuals are concerned. "No one is under a duty to resort to arbitration unless by clear language he has so agreed" (*Matter of Lehman* v. *Ostrovsky,* 264 N. Y. 130, 132; *Matter of Writers Guild* [*Prockter Prods.*], 1 N Y 2d 305, 308; *Matter of Eagar Constr. Corp.* v. *Ward Foundation Corp.,* 255 App. Div. 291, 293). One who seeks to compel arbitration has the burden of establishing that there was a clear intent by agreement to limit the parties to that method of deciding the dispute and must himself comply with the express provisions of the contract on which he relies. (*Matter of Layton-Blumenthal* [*Wasserman Co.*], 280 App.

Div. 135; *Matter of Eagar Constr. Corp.* v. *Ward Foundation Corp.*, 255 App. Div. 291, 293, *supra.*)

The contract (art. XXIV) contains an arbitration clause which provides that "Arbitration shall not apply to the provisions of the following: * * * ' XI ' * * * and ' a ' to ' c ' inclusive of Par. ' 1 ' of Art. ' XX '; as to those provisions the parties shall have their remedies as provided by law."

It is at this juncture that the respondent's admission that its assets were distributed to its stockholders acquires added significance. The contract was treated as an asset and the completion of the work was assumed by the individuals who held the corporate stock. The papers do not indicate that the collection of any moneys due for work performed under the contract was reserved to the corporation. It must be assumed therefore that the corporation divested itself of the right to collect such funds by the transfer of the contract. Article XI specifically prohibits the transfer of any moneys due under the contract without the petitioner's consent. It is manifest from the limitation of issues to be submitted to the arbitrators, that questions concerning any transfer of the contract or moneys due thereunder are not subject to arbitration.

The respondent has strenuously urged that under the General Corporation Law (§ 29) the corporate entity survives dissolution for the purpose of the collection of assets due to the corporation. While the assertion is correct as a general statement, we cannot see its applicability here. If the contract had been retained by the corporation upon dissolution and the work thereunder had been completed by it, there might be some force to the contention. However, the dissolved corporation did not complete the contract, but rather conveyed it in some form as a distribution to certain individuals. Indeed, the respondent's president in his affidavit specifically states that " Swiss Construction Corporation was dissolved and its assets, subject to its liabilities, distributed to its stockholders." Presumably this was done pursuant to section 29, which authorizes the directors to distribute the assets remaining after the payment of debts and expenses. The demand for arbitration or for payment cannot be made by the corporate entity which no longer has an interest in the contract.

Absent articles XI and XX of the agreement, it is questionable whether the legal effect of the dissolution of the corporation would present an arbitrable dispute. (See *Matter of Kosoff [Jones]*, 276 App. Div. 621, 624.) With these provisions as an integral part of the contract made by the parties, it is clear that they eliminated the question of assignment or

transfer of the contract or moneys due thereunder from the ambit of arbitration.

In this case, it must be held that the parties by their agreement did not obligate the petitioner to arbitrate with substitute performers. To decide otherwise would be to rewrite the contract and that we may not do. (*Matter of Brookfield Clothes* [*Rosewood Fabrics*], 4 A D 2d 458, 461.) The order at Special Term should be reversed on the law and the motion to stay arbitration granted, with costs and disbursements to appellant.

RABIN, J. P., VALENTE, McNALLY and STEVENS, JJ., concur.

Order unanimously reversed on the law, with $20 costs and disbursements to the appellant, and the motion granted, with $10 costs.